HENRY PERRY, Respondent, v. SMITH M. FORD, Appellant.

### March 30, 1885.

1. EVIDENCE.—Admission of incompetent testimony against objection, when liable to do harm, is reversible error. When incompetent evidence is offered, in this case as to facts not involved in the issues and of which the other party could not have had notice, and is objected to by the opposite party, and the objections are overruled by the court and the evidence is admitted ; if it be such as was calculated to do harm to the party so objecting by drawing the minds of the jurors from the point in issue, and to mislead them ; the action of the court in overruling such objection is erroneous, and is ground for reversal.

2. MASTER AND SERVANT — RELATIONS OF, DISTINGUISHED BETWEEN THOSE OF CONTRACTOR AND CONTRACTEE.—*Prima facie*, a person found doing service for another is in the other's employ. Every contract made by the owner of a building for repairs therein does not create the relation of contractee and contractor between the owner and the person contracted with. If the owner retains the power of controlling the work, the relation existing between him and the person contracted with, so far as the responsibility on the

part of the owner for the acts of the person employed, done in and about the repairs, is concerned, is that of master and servant. The mere fact that the person employed followed a certain trade or profession, or carried on a separate and distinct employment does not change the rule. (Wood on Master and Servant, pp. 584, 626, 627.)

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Reversed and remanded.*

Statement of the case by the court.

This is a suit for personal injury. The petition is in words as follows (omitting the caption):

Said plaintiff, Henry Perry, for cause of action against defendant, the said Smith M. Ford, states that heretofore, to-wit; on or about the 30th day of October, 1881, the said defendant and one ——— Brown were, and for a long time prior thereto had been, ever since the date aforesaid have been, and now are, the owners of two certain store-rooms and buildings, known and numbered 503 and 505, fronting on Delaware street, between Fifth street and Missouri avenue, in the City of Kansas, county of Jackson, and state of Missouri, and the ground on which the same are situated, extending eastwardly to what is commonly known as and called The Times Building, which fronts on Fifth street, in said city, is situated. At the east end of said buildings of defendant Smith M. Ford and said Brown, there is an area of land or ground belonging to them not covered by their said building, but planked and covered over by an elevated plank floor. During all the time aforesaid, certain of the basement, ground floor, or other rooms of said building of said defendant and said Brown, opened upon and were accessible from said elevated plank floor, by means of doors, and a room in the east end of the building of one J. Feld, next north of and adjoining to the ground and buildings first aforesaid, fronting both on said Delaware and Fifth streets. That prior to and on the day of the wrongs and injuries hereinafter mentioned, said defendant Smith M. Ford and said Brown

had owned, kept, and maintained on said elevated plank floor awater-closet and privy, for the use, in common, of their said buildings, and that of said Feld, and the occupants thereof respectively, as also all other persons who should have occasion to visit or frequent either of said buildings, or any of the rooms of either thereof. That during all the time aforesaid, and on the day of the happening of the wrong and injury hereinafter mentioned, the east basement room of said Feld building, which so fronted and opened upon said Fifth street as aforesaid, was used and occupied by one ———— Alms, as tenant of said Feld, for the purpose of carrying on, and he was carrying on thereat, a public saloon or dramshop, to which the whole public were invited to resort at pleasure. During all said time there was a door on said Fifth street opening and leading into said saloon or dramshop, and another door in the rear or back part of said saloon or dramshop room, opening to and leading out upon said elevated plank floor to said water-closet and privy, and to certain of the rooms of said defendant Smith M. Ford and said Brown, which said rooms were then occupied, and access to and egress therefrom were had by passing through said saloon or dramshop. During all said times, and on the day of the happening of the injury hereinafter mentioned, there existed between said defendant Smith M. Ford and Brown, and said Feld, an agreement that all the persons occupying any of the rooms in either of said buildings, and all their customers and all others who should feel inclined to frequent any of said rooms, either on business or pleasure, should pass through said doors and over said elevated floor to, and use said water-closet and privy at pleasure. During all said time, and on the day of the happening of the injury hereinafter mentioned, such persons and the plaintiff were in the habit of passing through said doors, back and forth, to and from the said rear rooms of said defendant and said Brown, over and upon said elevated plank floor, and to and from and to use said water-closet and privy, pursuant to said

agreement and the authority and license thereby and otherwise afforded them. On or about the 30th day of October, 1881, said defendant Smith M. Ford and said Brown undertook and did, under the immediate supervision and direction of said defendant, remove, remodel, and reconstruct said water-closet and privy, and in doing so left the privy vault open, uncovered, and exposed, without guards of any kind or any light or signal to notify or warn those who should have occasion to pass over said elevated plank floor, or to resort to and use said water-closet, of its condition. That said privy vault was then and there a dangerous and unsafe place, but defendant, disregarding his duty, negligently left the same in the exposed condition aforesaid. That afterwards, on or about the night of the 30th day of October, 1881, when it was quite dark, the plaintiff having occasion to resort to and use said water-closet and privy, being ignorant of its unprotected and dangerous condition, attempted to do so, using necessary care, caution and prudence, not being guilty of any negligence, and then and there, by the negligence aforesaid of said defendant before mentioned, fell into said privy vault, and was then and thereby greatly bruised and incurably injured and hurt in his body and limbs, and became sick and unable to attend to his ordinary labor and business, and was confined to his room for a long space of time, and incurred and paid large sums of money in and about having himself properly treated by physicians and for medicine; by reason of all whereof he has sustained damages to the amount of three thousand dollars, for which and his cost of suit he asks judgment.

The answer was, first, a general denial; second, contributory negligence on the part of plaintiff directly contributing to the injury complained of.

The reply was a general denial of the averments of the answer.

At the trial both sides adduced evidence tending to support the issues on their parts respectively.

One exception was saved by defendant as to the

evidence of which he complains. The following question was put by plaintiff to his witness, Evans.

Q. ˙ Do you know of any other person.having fallen in there about this time; just before or after?

·The court: If you know of your own knowledge you may say.so.

Q. Have you not?

A. It is just the same as I have heard of Mr. Perry's. I heard his statement. I did not see˙him fall. It was spoken of there about the same time by some person. I did not see anybody fall. I did. not know there was a water-closet there.

The court below gave numerous instructions which it is unnecessary for us to notice. The jury found for the plaintiff. The case is here on appeal by defendant.

C. O. Tichenor, for the appellant.

I. Upon what ground can defendant be held liable? 1. Not on the ground that the water-closet was a nuisance, To hold him liable, notice of the fact must be shown. It is not claimed that he knew of it.—*Pennay* v. *Berry*, 61 Mo. 359; *Grigsby* v. *Clear Lake Co.*, 40 Cal. 409; *Pillsbury* v. *Moore*, 44 Me. 156. 2. Not on the ground of neglect in reference to the persons who did the work, for it is not claimed that they were not experienced and skilful. By the petition the liability is put solely on the ground that defendant left the privy vault open, uncovered, and exposed. The evidence shows such facts did not exist. The demurrer to the evidence should have been sustained, by giving 5th instruction for defendant.

II. Defendant was not liable for the neglect of the employe, if there was any, of the man to whom he gave the contract to pull down and re-build the water-closets. He notified tenants that closets were about to be repaired and posted a notice to that effect. Defendant is not liable to third parties for injuries by the contractor's negligence. Wharton on Negligence, sect. 181. The instruction assumes that it makes no difference whether this relation existed or not. There was no evidence to show that it did exist, but to the contrary. It also refers

to the petition in five different places for the purpose of incorporating parts of it in the instruction.—*Dasslee* v. *Nicely*, 32 Mo. 500 ; *M. C. & O. Co.* v. *H. & St. Jo. R. R.* 35 Mo. 84. It enlarges and changes the cause of action.

III. A witness was allowed to testify, against defendant's objection, as to *another party* having fallen into this water-closet. Defendant was not prepared to try the case of the other man.

H. M. WITHERS and BOGGESS & MOORE, for the respondent.

I. There was no issue made, either by the pleadings or the evidence, as to whether the appellant's premises were rented out to and in the control of tenants. There was evidence that appellant was bound by contract to keep up and maintain said water-closet for the use and benefit of the Feld building.

II. Objection is made to admission of incompetent evidence. It appears from the record, that on asking a certain question by respondent's attorney, appellant's attorney objected ; the court admonished the witness to speak of his own knowledge ; the witness answered so as to show he had no personal knowledge, and that was the end of it.

III. There was no evidence that appellant had let the contract to make the repairs in question *and had no control over the manner of doing the work.*

IV. The 5th and 6th instructions asked for defendants were rightly refused. The other instructions asked by the defendant, and given by the court, covered all the issues made by the pleadings which had any evidence on which to predicate an instruction. The respondent's *first* instruction was in prefect harmony with these instructions, and the whole series of instructions fairly presented the law of the case to the jury ; and the court which tried the case refused to disturb their verdict.—*Courtney* v. *Boswell*, 65 Mo. 196.

V. It is settled law that the owner of the land is liable in damages to those coming to or entering on it, using due care, at his invitation or inducement, express

or implied, on any business to be transacted with or permitted by him, for any injury occasioned by the unsafe condition of the land, or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and had given them no notice of. —*Carlton* v. *Iron & Steel Co.*, 99 Mass, 216; *Straub* v. *Soderer*, 53 Mo. 38; *Elliote* v. *Pray*, 10 Allen Mass. 378.

Opinion by HALL, J.

I. In this court the defendant complains that the trial court permitted plaintiff's witness, Evans, to answer the above question.

There is no claim made by the plaintiff that the defendant had notice of the former accident referred to in said question, and of the accident "just after," mentioned in said question, the defendant could not have had notice.

There was no offer by plaintiff to show such notice. It must be taken therefore that the trial court permitted the introduction of the testimony for the purpose of showing the dangerous and unsafe condition of the water-closet or privy in suit, at the time of the alleged accident to plaintiff.

The fact that another person had fallen into the water-closet or privy, at a time subsequent or prior to the accident to plaintiff, was a *collateral fact* and evidence of that fact, tended to draw the minds of the jurors from the point in issue, and excite therein their prejudice, and mislead them.

The evidence was clearly inadmissible; it did not tend to show the condition of the water-closet or privy at the time the plaintiff was hurt.—Greenleaf on Evidence, 14th ed., vol. 1, sect. 52; *Collins* v. *The Inhabitants of Dorchester*, 6 Cushing 396; *Lewis* v. *Smith*, 107 Mass. 338; *Wentworth* v. *Smith*, 44 N. H. 422.

The admonition of the court to the witness to speak only of his own knowledge did not improve the question. What we have just said has been said with reference to the question confined to the witness's own knowledge.

The question as asked was incompetent for the reasons just given by us, and the objection made to it by the defendant should have been sustained. No objection to the competency of the question was removed by the court's admonition to the witness to speak only of his own knowledge and not of what he had heard. The court, by its admonition and by permitting witness to answer the question, clearly and unmistakeably announced its opinion to be that the question was proper, and that any knowledge had by the witness stated by him concerning any other accident at the place named, either just before or just after plaintiff was hurt, would be competent evidence. This in our opinion was error on the part of the court, calculated to do much harm to the defendant. Had the witness possessed the personal knowledge called for by the question and had he communicated that knowledge to the jury, the harm would have been done by the error of the court.

Inasmuch as the court improperly ruled that such personal knowledge on the part of the witness was competent evidence, and inasmuch as the court instructed the witness that of that knowledge he might speak, we think equal harm was done by that error of the court to the defendant, when the witness did speak not of his own personal knowledge, but of what he had heard, and when the court did not instruct the jury to pay no consideration to such testimony. The testimony as actually given by the witness was calculated to do the defendant harm. The question in response to which the testimony had been given, had been objected to by defendant, and the objection had been improperly overruled by the court. And we think that the error of the court in overruling defendant's objection to the question is the immediate cause of the answer of the witness, notwithstanding the admonition of the court to the witness. For this reason the judgment of the circuit court will have to be reversed and the cause remanded.

II. As this cause must be remanded for a new trial, it may not be unnecessary for us to give our opinion as to

the one other question involved herein, which is urged by defendant.

The only direct evidence in this case as to the contract made by defendant for the repairing of the water-closets in suit is the testimony of the defendant himself, who says: "I gave the contract to repair this closet to Mr. Cotter, and when he got ready to repair it, I went with him into the saloon and told Mr. Alms I was now ready to repair this closet".

The employes of Cotter, a plumber, did the actual work of repairing. The defendant was personally present at the scene of repairing, frequently during the work.

It is contested by counsel for defendant that the mere bare statement that defendant gave the contract for the work to Cotter, raises a presumption that the relation between defendant and Cotter was that of contractee and contractor, and not of that of master and servant. Such is not our opinion.

*Prima facie* a person found doing a service for another is in the other's employ. Wood on Master and Servant, p. 584.

Every contract made by the owner of a building for repairs therein does not create the relation of contractee and contractor between the owner and the person contracted with. If the owner retains the power of controlling the work, the relation existing between him and the person contracted with, so far as the responsibility on the part of the owner for the acts of the person employed done in and about the repairs is concerned, is that of master and servant. If in this case the defendant could have directed the time and manner of doing the work; if it had been unsafe to do the work at a certain time or in a certain manner, and the defendant could have required Cotter to desist, or could have altered the manner of doing the work; then was Cotter not defendant's contractor but his servant. Wood on Master and Servant, pp. 626, 627. The mere fact that Cotter followed a certain trade or profession, or carried on a separate and distinct employment does not change the rule. (Ib.)

It cannot then be presumed that Cotter was a contractor and not a servant from the mere general statement by defendant, that he had given the contract to Cotter. But if the defendant wants to relieve himself of liability as master in this case by reason of the relation of contractor, the defendant must prove the existence of that relation. If the defendant wishes to escape liability because by the terms of the contract his liability has been imposed upon Cotter, he must prove the terms of the contract. From the evidence in this case the terms of the contract do not appear and we cannot say that Cotter was not defendant's servant. The presumption is that Cotter was such servant. The evidence does not tend to rebut that presumption.

The judgment of the circuit court is reversed and the cause remanded. All concur.